[Cite as *In re L.T.*, 2018-Ohio-1487.]

STATE OF OHIO  )     IN THE COURT OF APPEALS
        )ss:     NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT )

IN RE: L.T.         C.A. Nos.  28788
   T.T.             28789
   B.T.
   A.T.


             APPEAL FROM JUDGMENT
             ENTERED IN THE
             COURT OF COMMON PLEAS
             COUNTY OF SUMMIT, OHIO
             CASE Nos.  DN 15-02-092
                   DN 15-02-093
                   DN 15-02-094
                   DN 15-02-095

DECISION AND JOURNAL ENTRY

Dated: April 18, 2018

SCHAFER, Presiding Judge.

**{¶1}** Appellants Mother and Father appeal the judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed their children L.T., T.T., B.T., and A.T. in the legal custody of their paternal grandmother ("Grandmother"). This Court affirms.

I.

**{¶2}** Mother and Father are married and are the biological parents of L.T. (d.o.b. 7/21/07), T.T. (d.o.b. 6/22/10), B.T. (d.o.b. 4/6/11), and A.T. (d.o.b. 7/23/13). In mid-January 2015, the police were called to a store where Mother and Father were involved in an altercation in front of L.T. Due to additional concerns, the police were further dispatched to the family's home to check on all the children. Troubling conditions in the home, as well as Father's contemporaneous arrest on domestic violence charges, necessitated the children's removal from

the home. Because Grandmother was available and appropriate, the police allowed her to take the four children into her care, thereby alleviating the need to invoke a Juv.R. 6 removal. Summit County Children Services Board ("CSB") was notified regarding the situation and followed up with the family. Because of significant concerns regarding drug use and domestic violence in the home, the agency held a team decision meeting and implemented an out-of-home safety plan under which Mother and Father would have supervised interaction with the children who would remain with Grandmother. After Mother violated the safety plan, CSB filed complaints, alleging that all four children were abused (endangered), neglected, and dependent.

{¶3} Mother and Father stipulated to probable cause for an emergency order of temporary custody, which the juvenile court awarded to Grandmother, along with an order of protective supervision to CSB. At the adjudicatory hearing, Mother and Father stipulated to a finding that the children were dependent, and the agency withdrew its allegations of neglect and abuse. At the subsequent dispositional hearing, Mother and Father agreed that the children would be placed in the temporary custody of Grandmother with an order of protective supervision by CSB, that Mother would have supervised visitation, that Father would have unsupervised visitation, and that the juvenile court would adopt the case plan as the order of the court. Soon after the initial disposition, both Mother and Father filed motions for legal custody. Shortly thereafter the juvenile court held a review hearing at which both parents withdrew their respective motions for custody.

{¶4} As the case proceeded, Mother's and Father's visitation with the children was limited or expanded based on the parents' actions and/or compliance, or lack thereof, with case plan objectives and other court orders. CSB sought and obtained two six-month extensions of temporary custody to Grandmother under the agency's protective supervision. One month

before the two-year sunset date of the case, Mother filed a motion for legal custody, Father filed a motion for legal custody, and the guardian ad litem filed a motion for legal custody to Grandmother. CSB filed a motion for the parents to have unsupervised visitation in their home. According to the agency's motion, the guardian ad litem agreed that Mother and Father should have unsupervised visitation, but only in the community. The court conducted an in camera interview of L.T. upon the guardian's request.[1]

{¶5} The magistrate held a final dispositional hearing at which CSB orally joined in the guardian's motion for legal custody to Grandmother. At the conclusion of the hearing, the magistrate issued a decision granting the guardian's and agency's joint motion, awarding legal custody of the children to Grandmother and terminating protective supervision. Father was granted biweekly unsupervised weekend visitation with the children, while Mother was granted supervised visitation. The juvenile court adopted the magistrate's decision the same day. Both Mother and Father filed timely objections. Before the juvenile court had ruled on the parents' objections, CSB filed a motion for an emergency modification of visitation based on a recent charge of domestic violence by Father against Mother, and positive drugs screens for both parents. The magistrate issued an order suspending Father's unsupervised visitations and scheduled the matter for a full evidentiary hearing for three days later.

{¶6} After reviewing the parties' briefs in support of and in opposition to the parents' objections, the juvenile court overruled the objections. It reaffirmed its order awarding legal

---

[1] This was the second in camera interview with this child. The magistrate conducted an initial interview with L.T. upon the guardian's request after Mother and Father both initially moved for legal custody within weeks of the initial disposition when they had agreed to an order of temporary custody to Grandmother under the protective supervision of CSB.

custody of the children to Grandmother and terminating protective supervision. The trial court further ordered that all prior orders not inconsistent with its judgment would remain in effect.

{¶7} After both parents and their attorneys failed to appear for the full hearing on CSB's motion to modify visitation, the magistrate rescheduled the matter for a month later. At the subsequent hearing, Mother, Father, and their respective attorneys again failed to appear. After hearing evidence on the agency's motion, the magistrate issued a decision in which he granted CSB's motion and limited both Mother and Father to supervised visitation. The juvenile court adopted the decision the same day. Neither parent filed objections to the magistrate's decision.

{¶8} Both Mother and Father filed timely appeals. Mother raises one assignment of error, and Father raises four assignments of error. This Court consolidates some assignments of error to facilitate review.

II.

**MOTHER'S ASSIGNMENT OF ERROR**

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT GRANTED LEGAL CUSTODY TO PATERNAL GRANDMOTHER AS IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND NOT IN THE CHILDREN'S BEST INTERESTS[.]

**FATHER'S ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING LEGAL CUSTODY OF THE MINOR CHILDREN TO PATERNAL GRANDMOTHER WHEN FATHER HAD COMPLETED HIS CASE PLAN.

**FATHER'S ASSIGNMENT OF ERROR II**

THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING LEGAL CUSTODY OF THE MINOR CHILDREN TO THEIR PATERNAL GRANDMOTHER AS IT IS NOT IN THE BEST INTEREST OF THE CHILDREN.

## FATHER'S ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN GRANTING LEGAL CUSTODY OF THE MINOR CHILDREN TO THEIR PATERNAL GRANDMOTHER AS THIS DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶9}  Mother and Father argue that the juvenile court's award of legal custody to Grandmother was against the manifest weight of the evidence.  This Court disagrees.

{¶10}  In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered."  (Internal quotations and citations omitted.)  *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20.  When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶11}  "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child."  *In re K.H.*, 9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 12.  The statutory scheme regarding an award of legal custody does not include a specific test or set of criteria, but Ohio courts agree that the juvenile court must base its decision to award legal custody on the best interest of the child.  *In re B.B.*, 9th Dist. Lorain No. 15CA010880, 2016-Ohio-7994, ¶ 18, citing *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23.  In that regard, the juvenile court is guided by the best interest factors enunciated in R.C. 2151.414(D) relating to permanent custody.  *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 9, citing *In re T.A.*, 9th Dist. Summit No. 22954, 2006-Ohio-4468, ¶ 17.  Those

factors include the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, the child's need for permanence, and whether any of the factors in R.C. 2151.414(E)(7)-(11) are applicable. R.C. 2151.414(D)(1)(a)-(e); *see also In re B.C.*, 9th Dist. Summit Nos. 26976, 26977, 2014-Ohio-2748, ¶ 16. In addition, the juvenile court may also look to the best interest factors in R.C. 3109.04(F)(1) for guidance. *In re K.A.*, 9th Dist. Lorain Nos. 15CA010850, 15CA010860, 2017-Ohio-1, ¶ 17. While some factors overlap with those above, others include the child's adjustment to her environment; the mental and physical health of all persons involved; the parents' history of providing support and honoring companionship orders; certain indicia of violence, abuse, or neglect in any household involved; and whether a parent plans to or has established a residence outside of Ohio. R.C. 3109.04(F)(1).

{¶12} To the extent that Father argues that the juvenile court erred by awarding legal custody to Grandmother because he had complied with his case plan objectives, his argument is misplaced. While it is relevant to the best interest determination, this Court has repeatedly recognized that a parent's compliance with case plan objectives is not dispositive of the issue. *In re E.G.*, 9th Dist. Medina No. 16CA0075-M, 2017-Ohio-2584, ¶ 15, citing *In re T.W.*, 9th Dist. Summit No. 27477, 2016-Ohio-92, ¶ 17; *see also In re K.C.*, 9th Dist. Summit Nos. 26992 and 26993, 2014-Ohio-372, ¶ 22, citing *In re B.G.*, 2008-Ohio-5003, at ¶ 21. Accordingly, this Court will consider Father's case plan compliance where relevant to the factors relating to the best interest of the children.

{¶13} Mother and Father have both exhibited substance abuse issues throughout this case. Mother developed her addiction after using pain medications after a C-section delivery of B.T. During the more than two-year pendency of the case, Mother repeatedly tested positive for substances such as cocaine, marijuana, methamphetamines, and opiates. She also failed to

submit to many of her randomly required urine screens. Pursuant to CSB policy, a failure to submit to a drug screen gives rise to a presumption of a positive result. Although Father successfully completed his substance abuse case plan objective by submitting to an assessment, completing intensive outpatient treatment, and consistently submitting negative urine screens, he was arrested for driving under the influence in June 2016, and on drug-related charges (possession) in September 2016. While both the caseworker and guardian ad litem indicated that they were satisfied with Father's ultimate success in getting his own substance abuse issues under control, they expressed great concern that Father did not appear to understand the gravity of Mother's ongoing substance abuse issues. Accordingly, while Father had fully complied with his own objectives, his attitudes and actions demonstrated that he did not understand what he needed to do to keep the children safe during their exposure to Mother.

{¶14} The four children had been in the custody of Mother and Father their whole lives until their removal and placement with Grandmother on January 18, 2015. The children have remained in Grandmother's home from that time to the present. Grandmother has consistently met all of the children's basic needs, as well as their special needs.

{¶15} When the children were first placed in Grandmother's care, each was in need of medical, dental, educational, and/or mental health services. Both L.T. and T.T. required ongoing counseling based on the results of trauma assessments. In addition, L.T. was diagnosed with anxiety and an adjustment disorder. She also exhibited signs of "parentification" whereby she assumed the role of a parental or authority figure, particularly with Mother, because of her parents' failure to maintain order and keep her and her siblings safe. Both B.T. and A.T. exhibited some developmental delays. B.T. required the placement of tubes in his ears to alleviate a hearing problem. B.T. and A.T. both require speech therapy and have individualized

education plans to address deficiencies. In addition, A.T. was diagnosed with a failure to thrive and reactive attachment disorder. When initially placed with Grandmother, A.T.'s behavior was aggressive, self-harming, and tantrum-prone. Late in the case, when A.T. had developed better verbal skills, she disclosed incidents of inappropriate sexual touching by Mother. Because of her age, development, and mental health issues, she was not cooperative during an interview to explore those issues. L.T., however, disclosed similar issues; and there was an ongoing investigation in Trumbull County at the time of the dispositional hearing.

{¶16} Notwithstanding the children's special needs, all four have adjusted well to their environment in Grandmother's care. Grandmother takes them to their numerous medical, dental, and therapeutic appointments, often traveling longer distances to maintain the children in the care of familiar providers closer to the parents' home. Mother and Father, on the other hand, have rarely attended the children's appointments. The children do well in school and participate in various activities, including Scouting. They live with Grandmother and another young child in Grandmother's care. All the children get along well. The home is very large (3,230 square feet), with living quarters on the second floor. A paternal uncle ("Uncle") also lives on the ground floor of the home since his release from prison. No one involved with the case expressed significant concerns about Uncle's interactions with the children. Grandmother asserted that Uncle interacts with the children who recognize him as a good uncle.

{¶17} By all accounts, Grandmother and the children love one another and are closely bonded. The guardian ad litem observed that the children go to Grandmother for comfort and support. L.T. reported that she feels safe with Grandmother, but not safe with Mother due to Mother's erratic behavior. T.T. becomes anxious after visitations with Mother based on Mother's erratic behavior and inconsistency. The guardian also reported that the children love

Mother and Father and are bonded to both parents, as well. Father behaves appropriately with the children, while Mother's behavior is appropriate "[f]or the most part." The children reported to the guardian that Mother discusses the case with them and does not follow the visitation rules in the absence of supervision. Both Father and the maternal grandmother have allegedly allowed Mother to spend time with some of the children without adequate supervision.

{¶18} Despite their love for their parents, all four children expressed a desire to remain with Grandmother and merely visit with Mother and Father. B.T. in particular was adamant that he did not want to speak with the guardian ad litem unless she could tell him that he did not have to go home to Mother and Father. Although L.T. reported that she feels safe with Father, she was clear that she did not believe that Father could keep her and her siblings safe from Mother.

{¶19} In fact, the major concern of both the caseworker and guardian ad litem was that Father had not demonstrated an understanding of the significance of Mother's issues to protect the children from harm when Mother was involved with the family. Although Father testified that "enough's enough" when he told Mother to move out of the family home six or seven weeks before the hearing after her hair follicle test was positive for multiple drugs, the guardian ad litem reported that most of Mother's belongings were still in the home. Both the caseworker and the guardian ad litem were concerned that Father would allow Mother to return home and have contact with the children, particularly because Father had asserted that his only concern was that the children felt comfortable with Mother. Despite Father's assertions that he would buy kits and test Mother for drugs every time she was with the children, the caseworker and guardian ad litem were not convinced that Father's eleventh hour efforts were based on a sincere understanding of the gravity of Mother's substance abuse issues and the effect they have had on the children's safety.

{¶20} The children's need for permanence can be met by Grandmother. She indicated her willingness to continue to care for the children's basic and special needs. She further asserted a willingness to continue to facilitate visitation for Mother and Father. Although Grandmother and Mother have had an ongoing strained relationship, Grandmother and Father have a good relationship. Grandmother planned to communicate with Mother via Father.

{¶21} Grandmother has kept the children safe and healthy during the more than two years they have been in her care. Mother and Father both expressed concerns regarding Uncle's girlfriend who spends time in Grandmother's home. The girlfriend has a criminal history involving drugs, and she has none of her own seven children in her care. CSB did not conduct a background check on the girlfriend. Nevertheless, the caseworker and guardian ad litem were not concerned about the children's exposure to Uncle's girlfriend, because Grandmother did not leave the children alone with her and had consistently kept the children safe from harm. None of the children expressed any apprehension or fear regarding either Uncle or his girlfriend.

{¶22} Based on a review of the evidence, this is not the exceptional case where the finder of fact clearly lost its way and created a manifest miscarriage of justice in awarding legal custody of L.T., T.T., B.T., and A.T. to Grandmother. The evidence established that Mother had not addressed the issues that jeopardized the safety and stability of the children. Furthermore, although Father had completed his case plan objectives, he experienced some lapses in judgment which resulted in criminal convictions for driving while under the influence and drug possession. In addition, Father was unable to demonstrate that he recognized the significance of Mother's issues. Accordingly, the caseworker and guardian ad litem maintained grave concerns that Father would reintegrate Mother into the home, would not supervise her interaction with the

children, and would not keep the children safe. Even L.T. expressed her concerns that Father would not ensure that she and her siblings were safe when Mother had interaction with them.

{¶23} On the other hand, the evidence demonstrated that the children felt safe in Grandmother's care. All four children expressed the desire to remain with Grandmother and merely visit with Mother and Father. None of the children expressed any fear regarding Uncle or his girlfriend, who spent time in Grandmother's home. Grandmother meets the children's basic and special needs. She facilitates visitation with the parents and asserted that she would continue to do so. The children have all acclimated well into Grandmother's home, and their behaviors have greatly improved since living with Grandmother. Under the circumstances, the juvenile court's finding that an award of legal custody to Grandmother was in the best interest of the children was not against the manifest weight of the evidence. Mother's sole assignment of error and Father's first, second, and third assignments of error are overruled.

### FATHER'S ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED WHEN IT PROCEEDED TO CONDUCT A HEARING WHEN FATHER WAS UNREPRESENTED BY COUNSEL.

{¶24} Father argues that the juvenile court erred when it conducted a full hearing on CSB's motion to modify visitation when neither Father nor any attorney on his behalf was present. Father failed to preserve this issue for appeal by failing to object below.

{¶25} Both Father and his counsel of record were copied on the order rescheduling the motion hearing for a date one month after the hearing was originally scheduled to occur. Father does not explain why he did not appear at the hearing. In addition, although Father's appointed counsel moved to withdraw and for appointment of new counsel mere days before the date of the rescheduled hearing, the trial counsel did so expressly for the purpose of allowing Father to

pursue an appeal from the judgment awarding legal custody to Grandmother. The juvenile court granted counsel's motion and appointed counsel for Father solely for purposes of appeal.

{¶26} Juv.R. 40(D)(3)(b)(iv) provides:

Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Juv.R. 40(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b).

{¶27} Therefore, "[w]hen a party fails to raise an issue in the party's objections to the magistrate's decision, it may not be raised for the first time on appeal." *Varner v. Varner*, 9th Dist. Wayne No. 06CA0024, 2007-Ohio-675, ¶ 22. As Father failed to challenge the modification of his visitation with the children by filing objections to the magistrate's decision, he has forfeited the issue on appeal, except for a claim of plain error. *See* Juv.R. 40(D)(3)(b)(iv). Father has failed to allege plain error, and this Court declines to create an argument on his behalf. *In re N.C.*, 9th Dist. Summit Nos. 27116 and 27118, 2015-Ohio-1627, ¶ 62, citing Juv.R. 40(D)(3)(b)(iv); App.R. 12(A)(2) and 16(A)(7). Father's fourth assignment of error is overruled.

III.

{¶28} Mother's sole assignment of error and Father's four assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

_____
JULIE A. SCHAFER
FOR THE COURT

CARR, J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

JASON D. WALLACE, Attorney at Law, for Appellant.

BARBARA J. ROGACHEFSKY, Attorney at Law, for Appellant.

RANDALL C. BRAY, Attorney at Law, for Appellee.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.

JOSEPH M. KERNAN, Guardian ad Litem.