[Cite as *In re W.R.*, 2024-Ohio-2556.]

STATE OF OHIO      )
                   )ss:
COUNTY OF SUMMIT   )

IN RE: W.R.
      R.R.

IN THE COURT OF APPEALS
NINTH JUDICIAL DISTRICT

C.A. Nos.     30951, 30952,
                  30982, 30983

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.   DN 21 07 0529
                DN 22 06 0519

DECISION AND JOURNAL ENTRY

Dated: July 3, 2024

FLAGG LANZINGER, Judge.

{¶1}    Appellants Mother and Father appeal the judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated their parental rights to their two sons and placed the children in the permanent custody of Summit County Children Services Board ("CSB" or "the agency"). This Court affirms.

I.

{¶2}    Mother and Father are married and are the biological parents of five children. The juvenile court involuntarily terminated their parental rights as to their three daughters, V.R., S.R., and I.R., placing those children in the permanent custody of CSB. This Court affirmed that judgment. *See In re I.R.*, 9th Dist. Summit Nos. 30500, 30501, 30502, 30529, 30530, and 30531, 2023-Ohio-3044, ¶ 1. These cases involve the parents' two younger sons, W.R., born November 19, 2020; and R.R., born January 22, 2022.

{¶3}    CSB became involved with the family in 2021, after receiving a referral regarding unsafe, unsanitary, and neglectful conditions in the home.  After further investigation, including disclosures by V.R. and S.R. that Father had engaged in sexual contact and conduct with them, CSB alleged that V.R., S.R., I.R., and W.R. were dependent, neglected, and abused children.  R.R. was not yet born at that time.

{¶4}    At the adjudicatory hearing, Mother and Father waived their rights to a hearing and stipulated that all four children were dependent, neglected, and abused as alleged in the complaints. The complaints expressly alleged that Father had sexually abused the two older girls and that an Akron Children's Hospital CARE Center professional found six-year-old V.R.'s disclosures were consistent with a  child who had experienced sexual abuse.

{¶5}    Thereafter, the parents also waived their rights to a dispositional hearing.  They stipulated to the juvenile court's orders placing the children in CSB's temporary custody, prohibiting their visitation with the children, and adopting the agency's case plan.  Mother's and Father's case plan objectives addressed basic needs, including decluttering the hoarder-type conditions in the home and remedying the unsanitary and unsafe conditions therein; and mental health concerns.  The agency later amended the case plan to add a requirement for Father to obtain a sexual offender evaluation and follow all recommendations.

{¶6}    While the four siblings' cases were pending, Mother and Father left Ohio for Pennsylvania where R.R. was born.  The local child welfare agency removed the newborn and a juvenile court in Pennsylvania adjudicated him dependent and transferred the case to Summit County, Ohio, for consolidation with the siblings' cases.  Summit County Juvenile Court could not schedule an initial dispositional hearing within the statutory time limit, so CSB dismissed the case and refiled a complaint alleging R.R.'s dependency.  The juvenile court adjudicated R.R.

dependent after a contested hearing. The parents appealed and this Court affirmed the trial court's judgment. *In re R.R.*, 9th Dist. Summit Nos. 30553 and 30582, 2023-Ohio-2941, ¶ 1.

{¶7} Shortly after filing its complaint regarding R.R., CSB moved for permanent custody of V.R., S.R., I.R., and W.R. Three months later the agency moved for permanent custody of R.R. The juvenile court held a hearing regarding the four older siblings and granted the agency's motion as to the three girls. The court granted a six-month extension of temporary custody as to W.R., however, to allow the agency to determine if a maternal aunt's Interstate Compact for the Placement of Children ("ICPC") assessment would approve placement of both W.R. and R.R. in her home.

{¶8} The brothers remained in temporary custody while the various appeals in these cases were pending. CSB filed a renewed motion for permanent custody regarding W.R. and R.R. after the maternal aunt asserted that she and her husband no longer wished to be considered for placement. After this Court affirmed the involuntary termination of Mother's and Father's parental rights as to V.R., S.R., and I.R., CSB filed a motion for a reasonable efforts bypass determination that the agency was excused from engaging in further reunification services for the parents. After Mother and Father failed to respond to the agency's motion, the juvenile court granted it, allowing the agency to bypass its obligation to use reasonable efforts to prevent the children's continued removal from home and facilitate reunification with the parents.

{¶9} Prior to the final dispositional hearing, Mother moved for legal custody, with or without protective supervision by the agency. Father orally joined Mother's motion at the hearing. The guardian ad litem joined CSB's motion for permanent custody. At the conclusion of the hearing, the juvenile court granted the agency's motion and terminated Mother's and Father's

parental rights to W.R. and R.R. Both parents timely appealed. The juvenile court issued a stay of its judgment upon Father's request.

{¶10} Mother raises one assignment of error for review, while Father raises five. This Court consolidates some assignments of error and rearranges others to facilitate review.

II.

**FATHER'S ASSIGNMENT OF ERROR II**

THE TRIAL COURT DENIED THE PARENTS THEIR DUE-PROCESS RIGHTS GUARANTEED TO THEM BY THE UNITED STATES AND OHIO CONSTITUTIONS.

{¶11} Father argues that the juvenile court denied the parents their constitutional due process rights. This Court disagrees.

{¶12} Father cites *Armstrong v. Manzo*, 380 U.S. 545, 550 (1965), and asserts that "[t]he fundamental requisites of due process of law in any proceeding are notice and the opportunity to be heard." After recognizing the private interests of parents in the care and custody of their children, *Troxel v. Granville*, 530 U.S. 57, 65 (2000), he acknowledges that those interests "must be subordinated to the child's interest in determining an appropriate disposition of any petition to terminate parental rights." *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979). Nevertheless, Father asserts that "there was no fundamental fairness [and] [t]he parents were not afforded due process[,]" because they could not both work towards reunification by complying with case plan objectives while also protecting themselves from the threat of prosecution for sexual abuse crimes against their older children.

{¶13} In support, Father cites *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972), for the proposition that "due process is flexible and calls for such procedural protections as the particular situation demands." The *Morrissey* court clarified that "consideration of what procedures due

process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as the private interest that has been affected by governmental action." *Id.*, quoting *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 895 (1961).

{¶14} R.C. 2151.01 sets forth the dual purposes of the provisions of R.C. Chapter 2151 as follows:

> (A) To provide for the care, protection, and mental and physical development of children subject to Chapter 2151. of the Revised Code, whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety; [and]
>
> (B) To provide judicial procedures through which Chapters 2151. and 2152. of the Revised Code are executed and enforced, and in which the parties are assured of a fair hearing, and their constitutional and other legal rights are recognized and enforced.

Accordingly, the emphasis is on child welfare while ensuring that the parties', including parents', rights are not violated.

{¶15} In this case, Father does not argue that the juvenile court did not notify the parents of the permanent custody hearing or provide them with the opportunity to be heard. In fact, Mother and Father attended the hearing and each testified in their own cases in chief.

{¶16} Neither parent was compelled to testify as to any incriminating information. Nevertheless, they both chose in consultation with counsel to waive their hearing rights and stipulate to the allegations in the amended complaint regarding W.R. Those included V.R.'s report that Father had touched her private parts; her description of ejaculation; and that V.R.'s disclosures were found to be consistent with those of a child who had been sexually abused, as determined after an evaluation by the Akron Children's Hospital CARE Center's evaluation.

{¶17} The parents stipulated that W.R. was abused, neglected, and dependent. They were accordingly aware of the concerns underlying the children's removal from home. CSB developed a case plan designed to address those concerns, including Father's inappropriate sexual activity with at least one of his children. Understanding that the goal of the case plan was reunification and that the parents' objectives were tailored to help them remedy those concerns, Mother and Father stipulated to the juvenile court's adoption of the agency's case plan at W.R.'s dispositional hearing.

{¶18} Although the parents contested R.R.'s adjudication, they later waived their rights to a dispositional hearing as to that child, again stipulating to the trial court's adoption of CSB's case plan. R.R.'s case plan also included a sexual offender objective for Father.

{¶19} The crux of Father's argument now is that, had he complied with this case plan objective, he would have been compelled to admit that he had sexually abused at least one of his biological children, exposing him to the possibility of criminal prosecution and incarceration. Father could have objected to the agency's initial and amended case plans that included the sexual offender objective. *See* R.C. 2151.412(F)(2) (allowing parties to object and/or propose amendments to the agency's case plan and request a hearing). Not only did the parents fail to exercise their statutory right to object, they stipulated to the juvenile court's adoption of each child's case plan.

{¶20} A review of the record demonstrates that Mother and Father were accorded procedural safeguards designed to protect their fundamental parental rights. They received notice of the proceedings and had the opportunity to appear and be heard. They waived their right to object to the agency's case plan objectives. Accordingly, Father cannot now complain that those

very objectives deprived the parents of due process. Father's second assignment of error is overruled.

## FATHER'S ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED IN ADMITTING THE STATEMENTS OF TWO MINOR CHILDREN IN VIOLATION OF EVIDENCE RULES 803 AND 807.

{¶21} Father argues that the juvenile court erred by admitting the statements of V.R. and S.R. made to the Lighthouse Family Center professional who conducted their psychological assessments related to the girls' disclosures of sexual abuse by Father. This Court disagrees.

{¶22} App.R. 16(A)(7) and Loc.R. 16(D) require an appellant to cite to the specific pages in the record on which he relies in making his argument. Father cites to eight specific pages in the hearing transcript that he asserts contain inadmissible hearsay, the juvenile court's erroneous finding that the statements were made for purposes of medical diagnosis and treatment, and the parents' attorneys' objections to the evidence. A review of the transcript indicates, however, that the pages cited do not support Father's assertions of their substance. In fact, Father's citations to the record correspond with pages in the permanent custody transcript relating to Father's appeal from the judgment involving V.R., S.R., and I.R., not W.R. and R.R. Moreover, his assignment of error in this case is a verbatim recitation of an assignment of error from his appeal regarding the three older siblings. As Father has not cited to the record in this case, we decline to address his assignment of error. *See* Loc.R. 16(D) ("If a party fails to include a reference to a part of the record that is necessary to the court's review, the court may disregard the assignment of error or argument.")

{¶23} In addition, as the transcript pages Father cites do not indicate that the parents objected to the assessor's testimony, he is limited to arguing plain error. Father has not done so. This Court declines to create an argument on his behalf. *In re L.T.*, 9th Dist. Summit Nos. 28788

and 28789, 2018-Ohio-1487, ¶ 27, citing App.R. 12(A)(2). Father's fourth assignment of error is overruled.

### FATHER'S ASSIGNMENT OF ERROR V

IN A PERMANENT CUSTODY CASE, A PARENT HAS A RIGHT TO CONFRONT HIS OR HER ACCUSERS, AND ANY FAILURE TO PERMIT SAME IS A VIOLATION OF THE CONFRONTATION CLAUSE CONTAINED IN THE SIXTH AMENDMENT TO THE U.S. CONSTITUTION AND SUCH PARENT'S DUE PROCESS RIGHTS HAVE BEEN VIOLATED.

{¶24} Father argues that the juvenile court violated his Confrontation Clause right to confront his accusers, specifically, V.R. and S.R., the children's siblings who accused Father of sexual abuse. This Court disagrees.

{¶25} The Sixth Amendment to the United States Constitution provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *." The United States Supreme Court long ago held that "[t]he sixth amendment relates to a prosecution of an accused person which is technically criminal in its nature." *U.S. v. Zucker*, 161 U.S. 475, 481 (1896). Sixty years later, the highest court in the land considered various challenges to the investigative procedures of the Civil Rights Commission, but wrote as to the similar challenge in this case:

> Although the respondents contend that the procedures adopted by the Commission also violate their rights under the Sixth Amendment, their claim does not merit extensive discussion. That Amendment is specifically limited to "criminal prosecutions," and the proceedings of the Commission clearly do not fall within that category.

*Hannah v. Larche*, 363 U.S. 420, 440 (1960), fn. 16.

{¶26} This Court previously addressed a similar argument in a case involving a child's adjudication. *In re Dukes*, 81 Ohio App.3d 145, 151 (9th Dist.1991). The parents argued that the subject child's out-of-court statements violated their Confrontation Clause rights. *Id*. We rejected

the argument, holding that the Confrontation Clause is only applicable to criminal trials, while a hearing to determine a child's dependency, neglect, or abuse is not a criminal proceeding. *Id.* As a permanent custody hearing is also not a criminal trial, the same reasoning applies. Father's fifth assignment of error is overruled.

## MOTHER'S ASSIGNMENT OF ERROR

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT GRANTED PERMANENT CUSTODY TO [CSB] AS THE TRIAL COURT'S DECISION WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## FATHER'S ASSIGNMENT OF ERROR I

THE TRIAL COURT ABUSED ITS DISCRETION IN ITS GRANT OF PERMANENT CUSTODY TO [CSB] AS SUCH DECISION WAS NOT SUPPORTED BY THE EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## FATHER'S ASSIGNMENT OF ERROR III

[CSB] DID NOT MAKE REASONABLE EFFORTS TO FINALIZE A PERMANENCY PLAN FOR THE CHILDREN AND THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DENYING A SIX-MONTH EXTENSION.

{¶27} Mother and Father argue that the juvenile court's judgment awarding permanent custody of W.R. and R.R. to CSB is against the manifest weight of the evidence. Both parents argue that an award of legal custody to Mother was in the children's best interest. This Court disagrees.

{¶28} As an initial matter, although Father's third captioned assignment of error purports to address reasonable efforts and the denial of a six-month extension of temporary custody, the body of his argument merely asserts that the evidence demonstrated that Mother is currently able to provide a safe and stable home for the children. Accordingly, this Court addresses that argument under the umbrella of a manifest weight challenge.

**{¶29}** In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

**{¶30}** Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996). The best interest factors include: the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, the child's need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in R.C. 2151.414(E)(7)-(11) apply. R.C. 2151.414(D)(1)(a)-(e); *see In re R.G.*, 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11. Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption*

*of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

**{¶31}** As for its first prong allegations, CSB alleged that both children had been in the agency's temporary custody for more than 12 months during the prior 22-month period pursuant to R.C. 2151.414(B)(1)(d), or alternatively that the children could not or should not be returned to the parents' custody pursuant to subsection (B)(1)(a). As to the second allegation, the agency alleged that the parents had failed to remedy the concerns underlying the children's removal pursuant to R.C. 2151.414(E)(1); that Mother's and Father's parental rights were previously involuntarily terminated as to other children pursuant to subsection (E)(11), and that the parents were unwilling to protect the children from neglect pursuant to subsection (E)(14). "Although the agency might allege alternative first-prong grounds in support of its motion for permanent custody, it need only prove one." *In re F.D.*, 9th Dist. Summit Nos. 30410 and 30431, 2023-Ohio-706, ¶ 38.

**{¶32}** The juvenile court found that W.R. had been in CSB's temporary custody for more than 12 of 22 months, and that both children could not be returned to their parents' custody based both on Mother's and Father's failures to remedy the underlying concerns as well as their prior involuntary terminations of parental rights as to S.R., V.R., and I.R. Mother and Father do not challenge the trial court's first prong findings, which are supported by the record. While the agency established each ground by clear and convincing evidence, we specifically note that CSB presented certified copies of the judgment entries awarding permanent custody of the three older siblings to the agency and terminating Mother's and Father's parental rights. Accordingly, CSB proved by clear and convincing evidence the first prong ground alleged pursuant to R.C. 2151.414(B)(1)(a)/(E)(11).

{¶33} The agency further established that permanent custody was in the best interest of W.R. and R.R. The hearing took place over two days in October and December 2023, when the children were three and two years old, respectively. W.R. was in CSB's custody from the age of seven months, while R.R. was removed at birth and spent his entire life in agency temporary custody.

{¶34} The children reside in the same foster home, where they share close bonds with each other and the foster family. They are comfortable during visits with Mother, although they do not appear to share a bond with her. The family support specialist from Help Me Grow who had been working with Mother for almost three years testified that Mother is not fully engaged with the children during visits. Both she and the CSB caseworker testified that Mother is sedentary during visits, allowing the children to play nearby. The agency visitation aide testified that Mother has difficulty dealing with both boys at the same time, tending to focus on the "busiest" child at the time, while leaving the other to play by himself. Father has no relationship with either child because the juvenile court precluded him from visiting based on concerns involving the sexual abuse of V.R. and S.R.

{¶35} The children require permanency that the parents are unable to provide. Notwithstanding the parents' stipulations in W.R.'s case regarding sexual abuse by Father of at least one of the older children, Mother continued to deny that Father had done anything inappropriate. Although Father obtained his required sexual offender evaluation very late in the case, the assessor testified that Father was "less than forthcoming with his disclosure of information[,]" denying the sexual abuse allegations to which he previously stipulated. The assessor found Father untruthful as to other issues as well, including his otherwise substantiated criminal history and use of drugs and alcohol. While Father initially told the caseworker he agreed

with the report generated by the assessor, he later wavered and claimed that the assessment was not accurate. Due to Father's failure to acknowledge and address the agency's concerns regarding child sexual abuse, coupled with Mother's unrelenting support for Father, the professionals involved in these cases maintained that the children would not be safe in Mother's care.

{¶36} Mother moved out of the home she shared with Father in the hope of reunifying with the children. Nevertheless, Mother maintained regular contact with Father, sharing meals and a cell phone, attending counseling together, and going on dates. Although Mother denied that Father was living with her, one month before the final hearing date, Father informed the police that he was living at Mother's address when he reported a burglary at the parents' prior home.

{¶37} Both parents told the caseworker and guardian ad litem, and each also testified, that they do not plan to divorce. The caseworker testified that Mother and Father hope that their daughters V.R., S.R., and I.R. will eventually be returned to their joint care, even though this Court has affirmed the permanent custody judgments relating to the girls. The caseworker further testified that, because the parents are focused on the girls, they show little interest in engaging in services that might facilitate reunification with W.R. and R.R.

{¶38} While R.R. is developmentally on track, W.R. presents with various delays. When he came into care at seven months old, he was not sitting, crawling, or eating as expected of a child of that age. W.R. did not cry to indicate his needs. He was assessed to determine if his delays were genetic but the assessment discounted that basis, instead concluding that his developmental delays and failure to thrive arose out of situational neglect prior to his removal. W.R. still has speech deficits and participates in various therapies. Mother downplays the child's delays.

{¶39} At visits, Mother continues to require redirection to engage with the children and keep them safe. She modifies some behaviors but rejects some guidance. For example, the family

support specialist testified that she suggested that Mother not let the two-year-old R.R. have a pacifier so he will start talking more. Mother refused, stating that the foster parents were working on R.R.'s speech development.

{¶40} A major concern for the professionals who observed Mother's visits was her inattention to the children's safety. Mother would leave the visitation room without informing the visitation monitor, leaving the toddlers unattended. The visitation aide, Help Me Grow specialist, and guardian ad litem each testified that they had to intervene to prevent a child from falling off furniture, out of a wagon, or over a baby gate because Mother had either left the area or was not paying attention. On one occasion a month prior to the final hearing date, Mother was allowing R.R. to play with small balls he kept putting in his mouth. The visitation aide testified she had to repeatedly urge Mother to take the small toys away from the child because they posed a choking hazard.

{¶41} Mother's case plan compliance remained an issue up to the date of the hearing. The caseworker testified that she was satisfied that Mother had complied with her mental health case plan objective because she was consistently engaged in counseling. However, the caseworker and guardian ad litem testified that Mother had not demonstrated she could meet the basic needs of the children. Mother admitted that the home her parents bought for her was not yet habitable or safe for the children. Despite months of assertions by Mother that the home would be ready in a couple more weeks, at the time of the hearing, the house lacked flooring in some areas, doors had not been hung, the stairs lacked railings, and there was unfinished plumbing work. Mother testified that the contractor she had hired disappeared with the money she paid without completing the work. She admitted that she had no current suitable housing for the children.

{¶42} Both parents refused access by the caseworkers and guardian ad litem to their homes throughout most of the proceedings. Father was being evicted from the home he earlier shared with Mother. The guardian ad litem testified that she had recently driven by each parent's home. She observed sheets covering the front door of Father's home and noted a significant amount of furniture and other items on Mother's front porch.

{¶43} Given the children's young ages, the guardian ad litem spoke on their behalf. She testified that permanent custody was in the children's best interest based on the ongoing unsafe condition of Mother's home, Mother's difficulty managing both boys at the same time, and the likelihood that Mother would be unable or unwilling to prevent Father's access to the children. The guardian ad litem opined that the boys should remain together based on their strong bond. Both the caseworker and guardian ad litem testified that, while the foster parents initially did not want to adopt, they had recently become open to the idea because they were committed to ensuring that the children remained together.

{¶44} Finally, R.C. 2151.414(E)(11) is applicable to these cases, as the juvenile court previously involuntarily terminated Mother's and Father's parental rights as to three siblings of W.R. and R.R.

{¶45} Based on a thorough review of the record, this is not the exceptional case in which the trier of fact clearly lost its way and created a manifest miscarriage of justice by terminating Mother's and Father's parental rights and awarding permanent custody of W.R. and R.R. to CSB. Father did not seek custody of the boys. There was clear and convincing evidence that Mother was not in a position to provide a safe and stable home for the children. Mother's sole assignment of error and Father's first and third assignments of error are overruled.

III.

{¶46} Mother's and Father's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

_____
JILL FLAGG LANZINGER
FOR THE COURT

STEVENSON, P. J.
SUTTON, J.
CONCUR.

APPEARANCES:

THOMAS C. LOEPP, Attorney at Law, for Appellant.

JASON D. WALLACE, Attporney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.

JOSEPH KERNAN, Guardian ad Litem.